United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 10, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))))
No. 05-10729

Summary Calendar
)))))))))))))))))))))))))))))

MELODY J. GARSON,

Plaintiff-Appellant,

v.

JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
District Court No. 1:03-CV-0245-C

Before SMITH, GARZA, and PRADO, Circuit Judges.

PER CURIAM:[*]

Melody J. Garson seeks review of the administrative law
judge's ("ALJ") denial of Disability Insurance Benefits ("DIB").
Ms. Garson filed her application for DIB on July 20, 2000.

I. Facts and Procedure

Ms. Garson was born in 1955 and completed the eighth grade.
Ms. Garson claims to have been disabled since February 1, 2000
due to degenerative changes of the spine, obesity, borderline

-----

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

intellectual functioning, and dysthymia. At the administrative hearing, Ms. Garson also claimed to suffer from urinary and bowel incontinence, as well as foot spurs with foot pain and swelling. She also stated she has depression with suicidal thoughts, bipolar disorder, and post traumatic stress disorder due to verbal, physical and sexual abuse as a child.

On February 1, 2002, after considering Ms. Garson's age, educational background, work experience and residual functional capacity, the ALJ denied Ms. Garson benefits. He found that Ms. Garson could not perform her past relevant work as a cook, dishwasher, housemother, or attendant working with handicapped children. However, based on the opinion of a vocational expert, the ALJ concluded Ms. Garson could perform a restricted range of light work. As a result, there were a significant number of sedentary and unskilled jobs in the national and local economy that Ms. Garson could perform.

On October 31, 2003, the Appeals Council concluded that there was no reason to review the ALJ's decision and denied Ms. Garson's request for review. Ms. Garson filed a complaint in federal district court, seeking review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). On March 18, 2005, the magistrate judge recommended the ALJ's decision be affirmed. On March 30, 2005, the district judge issued an order affirming the Commissioner's decision. Ms. Garson then filed this appeal.

II. Analysis

Our review is limited to two questions: (1) whether the Commissioner's final decision is supported by substantial evidence, and (2) whether proper legal standards were used to evaluate the evidence. *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002)(citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)); *see also* 42 U.S.C. § 402(g). Substantial evidence "is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Watson*, 288 F.3d at 215 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although we carefully examine the record, it is the Commissioner's role to weigh the evidence. *Brown*, 192 F.3d at 496.

Ms. Garson argues that the Commissioner failed to consider all of her limitations in determining her residual functional capacity. However, the ALJ's findings are supported by the record. The ALJ concluded that although Ms. Garson retained the functional capacity for light work, she was further restricted to performing those jobs that require only occasional climbing, stooping, kneeling, crouching, and crawling. The ALJ also found that Ms. Garson had a mild concentration deficit and was limited to performing those jobs with a reasoning development level of 1,2, or 3, as defined by the *Dictionary of Occupational Titles*.

3

The ALJ explained that neither Ms. Garson's testimony nor the medical evidence supported her basic allegation that she is unable to perform any work on a regular and continuing basis. Recognizing in his evaluation of the evidence that Ms. Garson sought mental health treatment in January 2001, the ALJ found Ms. Garson's testimony regarding mental health care unbelievable.[1] He also stated that there was no evidence to support her contention of incontinence. Finally, the ALJ explained that Ms. Garson's respiratory ailments did not impose any work-related limitations and pointed out that there was no recent evidence of any cardiac impairment.

Ms. Garson argues that new evidence submitted to the Appeals Council indicated that she has edema of the lower extremities, limitation of motion in the shoulders, severe degenerative joint disease in her left knee, and is only capable of performing light work duty for one-and-a-half hours per day. The Appeals Council considered the evidence but found that the new evidence did not provide a basis for changing the ALJ's decision. The conditions justifying a remand based on new evidence are limited.

> In order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding. In addition, the new evidence must also pertain to the contested time period and not merely concern a subsequently acquired

---

[1] At the administrative hearing, Ms. Garson testified that she did not seek additional mental health care because she was afraid they would lock her up.

4

> disability or the deterioration of a condition that was not previously disabling.

*Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995)(internal quotations omitted).

In this case, the relevant dates are February 1, 2000, the date Ms. Garson claims she became disabled, and February 1, 2002, the date of the ALJ's decision. Dr. Endsley's[2] note that Ms. Garson is only able to work light duty for one-and-a-half hours per day and his conclusion that she is therefore unable to reasonably work, relates to a functional capacity evaluation performed on May 14, 2002. This does not pertain to the contested time period. Furthermore, the ALJ considered Ms. Garson's physical limitations to the extent they existed during the contested time period. As the Appeals Council stated, Ms. Garson needs to re-apply for DIB if she wants the Commissioner to consider whether she was disabled after February 1, 2002.

Ms. Garson next claims that the Commissioner failed to establish the existence of work in significant numbers that she can perform. The ALJ asked the vocational expert to consider a hypothetical individual of Ms. Garson's age, education, and employment history, and with Ms. Garson's residual functional capacity. The vocational expert testified that such a person was

---

[2] On May 20, 2002, Dr. Endsley reviewed a functional capacity evaluation that was performed on Ms. Garson on May 14, 2002. In addition, Dr. Endsley examined Ms. Garson on July 19, 2002.

capable of performing a job as a machine tender, food assembler, and assembler.  The ALJ found the vocational expert's testimony credible and accepted it.

For the reasons above, we AFFIRM the judgment of the district court.

AFFIRMED.